1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11    LOU ANN CLAUSON, a single person,          CASE NO. 3:22-cv-05025-RJB

                        Plaintiff,              ORDER ON DEFENDANTS'
12                                              MOTION FOR SUMMARY
           v.                                   JUDGMENT
13
      THURSTON COUNTY, a governmental
14    entity, by and through the THURSTON
      COUNTY SHERIFF'S OFFICE, a
15    governmental agency; TYLER TURPIN
      and JANE DOE TURPIN, husband and
16    wife; TYSON SHENKEL and JANE DOE
      SHENKEL, husband and wife;
17    JOHN/JANE DOES 1-5,

18                        Defendants.

19         This matter comes before the Court on the Defendants' Motion for Summary Judgment.

20    Dkt. 29.  The Court has considered the pleadings filed in support of and in opposition to the

21    motion and the file herein.

22               I.        **RELEVANT FACTS AND PROCEDURAL HISTORY**

23    **A. FACTS**

24

1       On January 31, 2019, officers of the Thurston County Sheriff's Office arrived at Plaintiff

2   Lou Ann Clauson's home in order to arrest her son, Cody, who had outstanding warrants. Dkts.

3   30 and 32-1 at 6. It was approximately 1:30 a.m. Dkt. 28-1 at 9. Deputy Jordan Goss[1] and

4   Defendant Deputy Tyler Turpin went to the door. Dkt. 32-1 at 6. Defendant Deputy Tyson

5   Shenkel was present at the scene with his canine, K9 Daro, who was on a three-foot leash the

6   entire time. Dkt. 30 at 2.

7       Ms. Clauson answered the door. Dkt. 32-1 at 7. Cody eventually appeared behind his

8   mother around five to seven feet from the door. *Id.* He had a pocket knife, which he put down,

9   but did not heed the officers requests that he step forward to be arrested. *Id.* at 8. Deputy Goss

10  entered the home to handcuff Cody, who began to struggle. *Id.* at 9. Ms. Clauson was arguing

11  and yelling "stop." *Id.* Deputy Turpin came in the house to help Deputy Goss. *Id.*

12      Although he was in the yard, Deputy Shenkel observed a conflict between Plaintiff,

13  Cody, and Deputies Goss and Turpin. Dkt. 30 at 2. Deputy Shenkel states that he saw the

14  Plaintiff strike Deputy Turpin with her fist. *Id.* Ms. Clauson acknowledges that she hit Deputy

15  Turpin but told him that she "didn't mean to hit [Deputy Turpin], it was just a reaction" when he

16  pushed passed her to get to her son. Dkt. 28-1 at 6 and 9. Deputy Turpin denies bumping into

17  Ms. Clauson. Dkt. 32-2 at 13. Deputy Turpin placed Ms. Clauson under arrest. Dkt. 30 at 2.

18      According to the Plaintiff, she was "ripped out" of her house by her arm and thrown to

19  the ground by Deputy Turpin. Dkt. 28-1 at 3-4. She was handcuffed while face down on the

20  ground. *Id.* Ms. Clauson says that while she was face down, "one of the deputies said the dog

21

22

23

24

---

[1] While Deputy Goss was named as a defendant in the Plaintiff's original Complaint, claims against him were dropped in the Amended Complaint which was filed on the stipulation of the parties. The Amended Complaint, as the superseding document, controls. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012)(noting that an amended complaint supercedes the original complaint and renders it without legal effect). Deputy Goss is no longer a defendant.

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 2

1    would bite her if she didn't comply" which she interpreted as an order to "stop crying and

2    moving around." Dkt. 28-1 at 5. Ms. Clauson contends that, at some point, she was bitten by

3    one of the dogs, but does not recall when. *Id.* at 5-6. She testified that it was the dog belonging

4    to the officer "with the round face." *Id.* at 6. In her declaration filed in opposition to the motion

5    for summary judgment, Ms. Clauson states that it was "likely" Deputy Shenkel's dog who bit her

6    because he was on the left side of the house as was she. Dkt. 33 at 2.

7            Deputy Shenkel denies that his dog, K9 Daro, bit Ms. Clauson or came within ten feet of

8    her. Dkt. 30 at 2. He denies communicating with Ms. Clauson. Dkt. 40 at 2. Deputy Shenkel

9    indicates that he did not see the other officer with a dog (Deputy Devin Bagby, who is not named

10   as a defendant) come near Ms. Clauson and did not see Deputy Bagby's dog bite her either. Dkt.

11   30 at 2. Deputy Bagby states that Deputy Shenkel was approximately 15 feet from Ms. Clauson

12   while she was outside on the ground. Dkt. 32-4 at 12.

13           According to Deputy Goss, Ms. Clauson did not mention a dog bite on the ride to the jail.

14   Dkt. 32-1 at 11. She did not report it to the fire department (who came to evaluate Cody for

15   injuries sustained during the struggle) either. *Id.*

16           Later that day, on January 31, 2019, the Thurston County Superior Court found that there

17   was probable cause to arrest and to initially detain the Plaintiff for third degree assault of a law

18   enforcement officer. Dkt. 28-4 at 2-4. She was released on her own recognizance. *Id.* at 2.

19           Ms. Clauson went to the doctor two days after her arrest. Dkt. 28-1 at 7. She was treated

20   for a single puncture wound and bruising of the left buttock. *Id.*

21           Ms. Clauson acknowledges that she missed a court date regarding her third degree assault

22   charge. Dkt. 33 at 4. She contends her lawyer told her to just appear at the next hearing. *Id.*

23

24

1   Ms. Clauson states that later that night, at least five officers[2] came to her home and arrested her

2   even though she explained "what she intended to do." *Id.* She was again transported to jail. *Id.*

3   Trial on Ms. Clauson's third degree assault charge was scheduled and reset three times;

4   the charge was dismissed the first day of the third attempt at trial due to witness unavailability.

5   Dkts. 33 at 3 and 38 at 2. Deputy Turpin testified that he did not remember whether he refused

6   to come in and testify for that trial. Dkt. 32-2 at 14. Ms. Clauson contends that the case was

7   dismissed because Deputy Turpin refused to show up for court. Dkt. 33 at 3.

8   **B. PROCEDURAL HISTORY**

9   Plaintiff Clauson filed this case on January 13, 2022. Dkt. 1. In her Amended

10   Complaint, she makes federal constitutional claims pursuant to 28 U.S.C. § 1983 for violations

11   of her Fourth and Fourteenth Amendment rights arising from her false arrest and/or

12   imprisonment and from the use of excessive force (assault). Dkt. 24 at 4-5. She makes a claim

13   for "conspiracy" to deprive her of her constitutional rights. *Id.* at 6. Ms. Clauson asserts

14   constitutional claims against the County for failing to train and supervise the officers regarding

15   the use of police dogs. *Id.* at 5. She makes claims pursuant to the Washington State

16   Constitution. *Id.* at 4. The Plaintiff asserts claims for negligence against the County and the

17   deputy handling the dog that bit her. *Id.* at 4. She seeks damages, attorneys' fees and costs. *Id.*

18   at 6-7.

19   **II.   DISCUSSION**

20   **A. SUMMARY JUDGMENT STANDARD**

21   Summary judgment is proper only if the pleadings, the discovery and disclosure materials

22   on file, and any affidavits show that there is no genuine issue as to any material fact and that the

23

24   [2] None of the officers involved in this incident were named in this case.

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 4

movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt.").  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986); *T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, which is a preponderance of the evidence in most civil cases.  *Anderson,* 477 U.S. at 254; *T.W. Elect.,* 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W. Elect.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed."  *Lujan v. Nat'l Wildlife Fed*., 497 U.S. 871, 888–89 (1990).

**B.  42 U.S.C. § 1983 GENERALLY AND QUALITIFED IMMUNITY**

1    In order to assert a claim under 42 U.S.C. § 1983, a plaintiff must show that (1) the

2    conduct complained of was committed by a person acting under color of state law, and that (2)

3    the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or

4    laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)(*overruled on other*

5    *grounds*); *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to

6    remedy an alleged wrong only if both of these elements are present. *Haygood v. Younger*, 769

7    F.2d 1350, 1354 (9th Cir. 1985).

8    Defendants here claim qualified immunity.  Defendants in a § 1983 action are entitled to

9    qualified immunity from damages for civil liability if their conduct does not violate clearly

10    established federal statutory or constitutional rights of which a reasonable person, in this case a

11    reasonable police officer, would have known.  *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009)

12    (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity balances two

13    important interests: the need to hold public officials accountable when they exercise power

14    irresponsibly and the need to shield officials from harassment, distraction, and liability when

15    they perform their duties reasonably.  *Harlow* at 815. The existence of qualified immunity turns

16    on the objective reasonableness of the actions, without regard to specific knowledge or

17    subjective intent. *Id*. at 819.

18    In analyzing a qualified immunity defense, the Court must determine: (1) whether a

19    constitutional right would have been violated on the facts alleged, taken in the light most

20    favorable to the party asserting the injury; and (2) whether, if so, the conduct violated clearly

21    established law when viewed in the specific context of the case.  *Saucier v. Katz*, 121 S.Ct. 2151,

22    2156 (2001).  "The relevant dispositive inquiry in determining whether a right is clearly

23    established is whether it would be clear to a reasonable officer that his conduct was unlawful in

24

1    the situation he confronted." *Id.*  These are questions of law to be determined by the court.  *Act*

2    *Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993).

3    **C.  FEDERAL DUE PROCESS - FOURTEENTH AMENDMENT CLAIMS**

4        "[I]f a constitutional claim is covered by a specific constitutional provision, such as the

5    Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that

6    specific provision, not under the rubric of substantive due process."  *United States v. Lanier*, 520

7    U.S. 259, 272 n.7 (1997).  To the extent the Plaintiff asserts claims under the Fourteenth

8    Amendment, they should be dismissed.  The events of which Plaintiff complains should be

9    analyzed under the Fourth Amendment because it is the specific provision that applies.  *Lacey v.*

10   *Maricopa County*, 693 F.3d 896 (9th Cir. 2012)(false arrest); *Loharsingh v. City & Cnty. of San*

11   *Francisco*, 696 F. Supp. 2d 1080, 1106 (N.D. Cal. 2010)(false imprisonment);  *LaLonde v.*

12   *County of Riverside*, 204 F.3d 947 (9th Cir. 2000)(excessive force/assault).

13   **D.  FEDERAL FOURTH AMENDMENT - FALSE ARREST/IMPRISONMENT**
     **CLAIMS**

14
     The Fourth Amendment to the U.S. Constitution prohibits unreasonable seizures.

15
     A claim for false arrest and false imprisonment are cognizable under § 1983 as a violation of the

16
     Fourth Amendment, provided the arrest was "without probable cause or other justification."

17
     *Vanegas v. City of Pasadena*, 46 F.4th 1159, 1164 (9th Cir. 2022); *Lacey at* 918; *Loharsingh* at

18
     1106.  To prevail on her § 1983 claim for false arrest and false imprisonment, Ms. Clauson must

19
     demonstrate that there was no probable cause to arrest her.  *Cabrera v. City of Huntington Park*,

20
     159 F.3d 374, 380 (9th Cir. 1998).

21
         "An officer has probable cause to make a warrantless arrest when the facts and

22
     circumstances within his knowledge are sufficient for a reasonably prudent person to believe that

23
     the suspect has committed a crime."  *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir.

24

1    2011).  Probable cause depends on the totality of the circumstances.  *D.C. v. Wesby*, 138 S. Ct.

2    577, 586 (2018)(*cleaned up*).  "It requires only a probability or substantial chance of criminal

3    activity, not an actual showing of such activity.  Probable cause is not a high bar."  *Id*.

4            The Defendants' motion for summary judgment on Ms. Clauson's Fourth Amendment

5    claims based on her alleged false arrest and false imprisonment should be granted.  Even

6    considering the facts in a light most favorable to Ms. Clauson, the officers had probable cause to

7    arrest and take her into custody for assault in the third degree.  Washington law provides that:

8            (1) A person is guilty of assault in the third degree if he or she, under
9            circumstances not amounting to assault in the first or second degree:

10               (a) With intent to prevent or resist the execution of any lawful
11               process or mandate of any court officer or the lawful apprehension
                 or detention of himself, herself, or another person, assaults another;
                 or . . .

12               (g) Assaults a law enforcement officer or other employee of a law
13               enforcement agency who was performing his or her official duties
                 at the time of the assault . . .

14   RCW 9A.36.031.  Ms. Clauson acknowledged that she hit Deputy Turpin while he was

15   attempting to arrest her son.  It is undisputed that her physical contact with him (the hitting) was

16   an unwanted touching.  That she later asserted that she did not intend to hit him is immaterial.  It

17   was reasonable for Deputy Turpin to discount that claim of innocence.  Arrestees often make

18   such proclamations. The facts and circumstances were sufficient for Deputy Turpin to believe

19   that Ms. Clauson committed the crime of assault in the third degree.  It was reasonable for him to

20   conclude that there was a "probability or substantial chance of criminal activity."  *Wesby* at 586.

21   Her Fourth Amendment claim based on her alleged false arrest and false imprisonment should be

22   dismissed.  No further analysis under *Saucier* is required on this claim because no constitutional

23   violation occurred.  *Vanegas* at 1165.

24

## E. FEDERAL FOURTH AMENDMENT - EXCESSIVE FORCE/ASSAULT CLAIM

"Under the Fourth Amendment, police may use only such force as is objectively reasonable under the circumstances." *LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000).  In determining whether an officer's use of force violates the Fourth Amendment courts balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)(*cleaned up*).  "That inquiry generally involves an assessment of factors such as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Orn v. City of Tacoma*, 949 F.3d 1167, 1174 (9th Cir. 2020)(*cleaned up*).

The Plaintiff asserts an excessive force claim against both Deputies Turpin and Shenkel (who handled the dog).  Both deputies claim they are entitled to qualified immunity.  These issues will be addressed below by deputy using the two step *Saucier* test.

### 1. Deputy Turpin – *Saucier* Steps - Violation and Qualified Immunity

Even considering the facts in a light most favorable to Ms. Clauson, Deputy Turpin did not violate Ms. Clauson's Fourth Amendment right against excessive force.  The nature and quality of the intrusion, "yanking" her out of the house, throwing her to the ground and handcuffing her was not excessive.  The government's interest in gaining control of the situation was substantial.  There is no dispute Ms. Clauson was arguing with the officers and then she hit Deputy Turpin, all the while her son was engaged in a physical altercation with another officer trying to arrest him within a few feet from her.  The crime of assaulting an officer in the official course of his duties is not insignificant.  It was not clear at the time of the events whether she

1  posed an immediate threat to the officers.  There is no evidence in the record that she was

2  resisting arrest.  On balance, the force used was objectively reasonable.

3      Additionally, even if Deputy Turpin violated Ms. Clauson's Fourth Amendment rights

4  against excessive force, he is entitled to qualified immunity under the second *Saucier* prong.  Ms.

5  Clauson fails to point to authority that would make it clear to a reasonable officer that his

6  conduct was unlawful in the situation he confronted.

7      2.  <u>Deputy Shenkel - *Saucier* Steps - Violation and Qualified Immunity</u>

8      There are issues of fact as to whether Deputy Shenkel violated Ms. Clauson's Fourth

9  Amendment right against excessive force.  Ms. Clauson asserts that she was bitten by a dog on

10  the buttocks when she was outside.  The record indicates that she did not go outside until she was

11  forced out by Deputy Turpin and immediately handcuffed.  If Ms. Clauson's version of events

12  are believed, it was only after she was handcuffed and in a prone position on her stomach that

13  she was bitten by the dog.  While Deputy Shenkel denies that the dog bit her, that he

14  communicated with her, or that he and the dog were anywhere near her, Ms. Clauson states that

15  it was "likely" Deputy Shenkel's dog that bit her.  If Deputy Shenkel's dog did bite her on the

16  buttock, she was already handcuffed and on her stomach.  At that point, the officers had her

17  under control.  The intrusion on Ms. Clauson (the bite) was not insubstantial.  The government

18  had no interest in engaging in more force against her.

19      Moreover, for the same reasons, there are issues of fact precluding qualified immunity for

20  Deputy Shenkel on this claim.  Likewise, if the dog did bite her, there are issues of fact as to

21  whether, considering the circumstances, Deputy Shenkel deployed the dog in good faith as is

22  required under RCW 4.24.410 (granting immunity from civil liability for dog handlers using

23

24

1  police dogs in good faith).  The Defendants' summary judgment motion on Ms. Clauson's Fourth

2  Amendment claim for excessive force against Deputy Shenkel should be denied.

## F.  FEDERAL CIVIL RIGHTS CONSPIRACY CLAIM

4  To allege a conspiracy under § 1983, a plaintiff must show "an agreement or 'meeting of

5  the minds' to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002)

6  (*cleaned up*).  "To be liable, each participant in the conspiracy need not know the exact details of

7  the plan, but each participant must at least share the common objective of the conspiracy." *Id.*

8  Parallel conduct may be enough to plausibly allege a common objective, but it must be more

9  likely than not that an illicit agreement caused the alleged constitutional deprivation.  *Ashcroft v.*

10  *Iqbal*, 556 U.S. 662, 680 (2009).

11  Ms. Clauson's claim for conspiracy under § 1983 should be dismissed.  She has failed to

12  point to any evidence that the Defendants had an "agreement or meeting of the minds" to violate

13  her constitutional rights.

## G.  FEDERAL FAILURE TO TRAIN AND SUPERVISE CLAIM ASSERTED AGAINST DEFENDANT THURSTON COUNTY

15  In order to assert a federal claim for violation of their constitutional rights against a

16  county, (sometimes referred to as a *Monell*[3] claim) a plaintiff must show that: (1) they were

17  deprived of a constitutional right; (2) the County had a policy; (3) the policy amounted to a

18  deliberate indifference to their constitutional rights; and (4) the policy was the moving force

19  behind the constitutional violation.  *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*,

20  237 F.3d 1101, 1110–11 (9th Cir. 2001).

---

[3] *Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978).

The Plaintiff states in her response to the motion for summary judgment that she is "abandoning her claim for improper canine training." Dkt. 31 at 1. The Plaintiff fails to discuss this claim further and fails to point to any evidence on the last three elements of her *Monell* claim against the County. No further discussion of this claim is required. The Plaintiff's claim for failure to train and supervise officers on the use of canines, asserted against Defendant Thurston County, should be dismissed.

**H. STATE LAW CLAIMS**

    1. Washington State Constitution

The Plaintiff's Amended Complaint refers to the Washington State Constitution. There is no private right of action under the Washington State Constitution. *Blinka v. Wash. State Bar Ass'n,* 109 Wash. App. 575, 590-591 (2001). To the extent Ms. Clauson makes claims under the Washington State Constitution, they should be dismissed.

    2. Negligence Asserted against Deputy Shenkel and Thurston County

Ms. Clauson makes a negligence claim against Deputy Shenkel and against Thurston County under the doctrine of respondeat superior. Dkt. 31. To prevail on a negligence claim in Washington, a plaintiff "must show (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury." *Ehrhart v. King Cnty.*, 195 Wn.2d 388, 396 (2020).

Washington police officers have a "duty to act reasonably in carrying out law enforcement functions." *Beltran-Serrano v. City of Tacoma*, 193 Wn.2d 537, 545 (2019). As it relates to police dog bites, the Washington Supreme Court has held that "a negligence cause of action arises where there is ineffective control of an animal in a situation where it would

1   reasonably be expected that injury could occur, and injury does proximately result from the

2   negligence." *Finch v. Thurston Cnty*., 186 Wn.2d 744, 752 (2016).

3   There are issues of fact as to whether Deputy Shenkel breached his duty to reasonably

4   carry out law enforcement functions.  There are issues of fact as to whether he had effective

5   control over his dog.  If Ms. Clauson's version of events is believed, the dog bit her while she

6   was handcuffed and on her stomach on the ground.  While Deputy Shenkel contends that the dog

7   did not bite her, Plaintiff points out that there is a chance that the dog bit her without Deputy

8   Shenkel's knowledge, giving rise to the possibility that he did not have control over his dog.  An

9   arrest is a situation where a dog bite (and resulting injury) could reasonably be expected to occur,

10   particularly, if as is alleged here, Deputy Shenkel did not have control over his dog.

11   While Deputy Shenkel claims he is immune from civil liability pursuant to RCW

12   4.24.410, there are issues of fact as to whether use of his dog was in good faith given the

13   circumstances.  Deputy Shenkel and the County's assertion that the public duty doctrine bars the

14   negligence claim is unavailing.  Ms. Clauson's negligence "claims arise out of [Deputy

15   Shenkel's] direct interaction with [her,] not the breach of a generalized public duty." *Beltran-*

16   *Serrano v. City of Tacoma*, 193 Wn.2d 537, 551 (2019).  The negligence claims do not arise out

17   of Deputy Shenkel's or Thurston County's "statutorily imposed obligation to provide police

18   services, enforce the law, and keep the peace. These statutory duties have always been, and will

19   continue to be, nonactionable duties owed to the public at large." *Id.* at 552.  The public duty

20   doctrine does not apply.

21   The motion for summary judgment on the negligence claim against Deputy Shenkel and

22   Thurston County should be denied.

23   3.   Malicious Prosecution

24

Ms. Clauson discusses a malicious prosecution claim in her response to the motion for summary judgment.  The Defendants properly point out that the Amended Complaint does not assert a claim for malicious prosecution.  Accordingly, the discussion on malicious prosecution will not be considered.  Further, even if it was considered, the finding above, that there was probable cause for Ms. Clauson's arrest, requires dismissal of this claim.  *Hanson v. City of Snohomish*, 121 Wn.2d 552, 558 (1993)(holding probable cause is a complete defense to an action for malicious prosecution).

**I.   CONCLUSION**

The Defendants' motion for summary judgment (Dkt. 29) should be denied as to Ms. Clauson's Fourth Amendment excessive force claim against Deputy Shenkel and her negligence claim against Deputy Shenkel and Thurston County.  The motion (Dkt. 29) should be granted as to Ms. Clauson's remaining claims.

**III.   ORDER**

Therefore, it is hereby **ORDERED** that:

- The Defendants' Motion for Summary Judgment (Dkt. 29) **IS:**

  o **DENIED** as to Ms. Clauson's Fourth Amendment excessive force claim against Deputy Shenkel and her negligence claim against Deputy Shenkel and Thurston County; and

  o **GRANTED** as to her remaining claims.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 4th day of December, 2023.

ROBERT J. BRYAN
United States District Judge